## Chicago & Eastern Illinois Railroad Company v. A. J. Kimmel, Administrator.

### Gen. No. 12,000.

1. FELLOW-SERVANTS—*who are.* An engine crew and common laborers held, in this case, fellow-servants upon the principle that they were actually employed by the same master and that the work of each had for its object the accomplishment of a common end sought to be performed by the united efforts of all.

2. DECLARATION—*when charge of negligence sufficient.* Held, upon the particular averments of the declaration involved in this case, that it was sufficient to sustain a recovery predicated upon negligence in failing to notify a servant that the car upon which he was working was about to be moved.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed November 14, 1905.

**Statement by the Court.** This is an appeal by the defendant from a judgment for $1,500 recovered against it in the Superior Court by the administrator of William H. Rockhold, an employee of defendant.

Rockhold at and for some time before his death was employed by the defendant as a laborer, in repairing, ballast-

ing and surfacing its tracks. near Marion, Illinois. He belonged to what was known as Extra Construction Gang No. 4, in which were forty or more laborers. These laborers unloaded cinders from cars, prepared the roadbed and placed the cinders on the roadbed. The cinders were brought in cars from Chicago in regular trains and the cars were left on side tracks near to the places at which they were to be unloaded. To move the cars from the places where they were left to the places where they were to be unloaded, the defendant had an engine and an engine crew consisting of a conductor, engineer, fireman and brakeman. The crew, as well as the laborers in Extra Gang No. 4, were under the charge and control of Francis, the foreman of the defendant in charge of said work, and both the engine crew and the construction gang were engaged exclusively in said construction work. The engine was used to take the laborers to and from the camp in which they slept to their places of work, and the engine was usually kept coupled to the cars which were being unloaded and used to move such cars when necessary. The engine or train crew only took part in operating the engine, coupling and uncoupling the cars, and other work connected with the operation of the engine and the cars attached thereto, and had nothing to do with the unloading of the cars or the work upon the roadbed. The laborers had nothing to do with the operation of the engine or the moving of cars.

February 11, 1899, the engine crew were ordered by Francis to go from the place where the laborers were unloading cars to bring three other cars to be unloaded. They returned with three loaded cars in front of the engine. A train of eight or nine cars, upon three of which the brakes were set, stood coupled together upon the track upon which the engine and cars came from the south. On one of the train of standing cars Rockhold and eight or ten other laborers were at work shovelling cinders from the car. The front car of the approaching train struck the car at the south end of the train of standing cars with sufficient force to drive that train forward forty or fifty feet, and thereby

Rockhold was thrown down from the car where he was at work to the track and so injured as to cause his death.

CALHOUN, LYFORD & SHEEAN, for appellant; ROBERT J. SLATER, of counsel.

ALDEN, LATHAM & YOUNG, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

We do not deem it necessary to consider the question whether any member of the engine crew was or was not guilty of negligence.

The engine crew and the laborers were employed by the same master. The common end or purpose of the work which all were employed to perform was the surfacing and ballasting with cinders the railroad track of the employer. To accomplish this end and purpose there were required the united efforts and labor of both the train crew and the laborers; the labor and efforts of the train crew to bring and put in their proper places the cars loaded with cinders, to move such cars when necessary, to take away empty cars, to haul the laborers to and from their camp; and the labor and efforts of the laborers to unload the cinders from the cars and spread them upon the roadbed.

In Abend v. T. H. & I. R. R. Co., 111 Ill. 202-211, it was said: "It is an error to suppose that a force of men cannot be engaged in a common service unless all are continually working at the same time and engaged in doing precisely the same kind of work. It is sufficient if all are actually employed by the same master, and that the work of each, whatever it may be, has for its immediate object a common end or purpose, sought to be accomplished by the united efforts of all."

We think that plaintiff's intestate and the other laborers were fellow-servants with the engineer and other members of the train crew, and for an injury sustained by one of them through the negligence of another the common master is not responsible. This conclusion is in accord with the decisions in the following cases upon similar facts: C. &

A. R. R. Co. v. Keefe, 47 Ill. 108; C. & A. R. R. Co. v. Murphy, 53 ib. 336; St. L. & S. E. R. R. Co. v. Britz, 72 ib. 256; T. W. & W. R. R. Co. v. Durkin, 76 ib. 395; Miller v. O. &. M. R. R. Co., 24 Ill. App. 326.

The question remains whether the judgment can be sustained upon the ground that the foreman, Francis, was guilty of negligence which directly caused or contributed to the death of plaintiff's intestate.

It is not claimed that Francis and Rockhold were fellow-servants, but the contention of appellant is that the negligence of Francis is neither averred in the declaration nor shown by the evidence.

The second count of the declaration sufficiently sets out the facts above stated; avers that the engine and cars attached thereto were under the control and management of divers servants of the defendant who were not fellow-servants with Rockhold; that while Rockhold was unloading a car of cinders in the exercise of due care, etc., the defendant "by its said servants, so carelessly and improperly drove and managed the said locomotive engine and train of cars that by and through the negligence and improper conduct of the defendant by its said servants in that behalf, the said locomotive engine and train then and there ran and struck with great force and violence upon and against said car upon which said William H. Rockhold was then and there standing and working as aforesaid; that in so doing, and before said locomotive engine and train ran and struck with great force and violence against the said car upon which the said William H. Rockhold was then and there working as aforesaid, no bell or whistle was sounded, and no warning of any kind was given to said William H. Rockhold that said locomotive engine and train were about to strike the car upon which said William H. Rockhold was then and there working as aforesaid; by means and consequence of which default and negligence of the defendant as aforesaid, and by means of the careless and improper driving and managing of said locomotive engine and train of cars the said William H. Rockhold was

then and there thrown with great force and violence from and off said car," etc.

The contention that this count only charges negligence in respect to the control and management of the engine cannot, we think, be sustained. The count also alleges, as a substantive act of negligence of the defendant, the failure of the defendant to give to Rockhold any warning that the engine or a car attached thereto was about to strike the car upon which Rockhold was then working, and that through the act of negligence so charged Rockhold received the injuries which caused his death. To maintain this charge of negligence, upon the ground of the negligence of Francis to give such warning, the plaintiff was bound to prove facts from which the jury might properly find that it was the duty of Francis to give such warning, as well as his failure to give warning, but it was not necessary to aver such facts or the existence of the duty, but it was sufficient to aver the ultimate fact that the defendant was guilty of negligence in failing to give such warning to Rockhold.

Francis testified that at the time of the accident he was standing by the side of the track about two car lengths from the south end of the train of cars on which the laborers were at work; that as the train to which the engine was attached approached to make the coupling, he saw the brakeman on the front car give the "slow" or "easy" signal to the engineer, and that he "then turned and hollered to the men to look out." The engineer testified that when the cars came together there was not any more jolt than an ordinary coupling would have made.

The question whether Francis was guilty of negligence was a question of fact for the jury. In determining that question it was for the jury to say what was the duty of Francis under the facts and circumstances shown by the evidence, as well as to find what he did or failed to do.

Whether there was evidence to warrant and support a finding by the jury that it was, under the circumstances shown by the evidence, the duty of Francis to give warning to the men who were at work on the standing cars, is a

question of law. But if there was evidence to warrant and support a finding by the jury that it was the duty of Francis to give such warning, then the question whether it was or was not the duty of Francis to give such warning is a question of fact. The engineer testified that when the cars came together there was not any more jolt than an ordinary coupling would have made. Eight or ten men were shovelling cinders from the same car with Rockhold, and other men were working on other cars, and by the concussion caused by the impact all the men were thrown down. When the cars came together Francis was standing by the side of the track, two car lengths from the south end of the train of standing cars. He saw the train approaching and knew that a coupling was about to be made between a car of that train and a car of the standing train.

If the jury found, as we think the evidence warranted them in finding, that it was usual and common in making a coupling between a car of a moving and a car of a standing train for the former to strike the latter with as much force as the one struck the other at the time in question, which was, as has been said, with an impact sufficient to drive a train of eight or nine cars, on three of which the brakes were set, forward forty or fifty feet, and to produce a jar or concussion which caused all the men who were standing on those cars at work to fall down, then we think that in view of the evidence as to the place where Francis stood and his knowledge of the peril to which the men who were at work on the car would be exposed when the moving train should strike the standing train, and the other facts shown by the evidence, the jury were warranted in finding that it was the duty of Francis to use reasonable care and diligence to give to the laborers on the cars warning of the new peril to which they were exposed, so that they might throw themselves down upon the cinders or take other steps to guard against the danger of being thrown from the car when the train on which they were should be struck by the other train.

The testimony upon the question whether Francis gave

any warning to the laborers on the approach of the train is conflicting. He testified that when he saw the brakeman give the "slow" or "easy" signal he called out to his men to look out. There is no testimony that anyone heard such call. Two witnesses who were on one of the standing cars testified that they did not hear him call out, and the brakeman, on his cross-examination, testified that he could not say that he heard Francis "holler" at the men. Upon this testimony and the testimony that all the men on the standing cars were thrown down by the impact, we cannot say that the jury were not warranted in finding that Francis failed to call out to the men on the cars, or to give them any warning of the approach of the train, nor in finding that the failure of Francis to give such warning constituted negligence on the part of the defendant which directly contributed to the injury and death of plaintiff's intestate.

We find no reversible error in the rulings of the court upon questions of evidence, nor in the giving or refusing of instructions.

The judgment will be affirmed.

*Affirmed.*